IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

ALLEN HEARD                                                          PLAINTIFF

v.                              No. 2:11–CV–00208–BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                      DEFENDANT


MEMORANDUM OPINION AND ORDER

Allen J. Heard sought judicial review of the denial of his application for

supplemental security income (SSI).[1]  Mr. Heard had a limited work record due, in part,

to incarceration.  He was first incarcerated from 1992 to 2001.[2]  In 2002, he worked as a

farm laborer, driving a grain tractor.[3]  In 2003, he worked as a carpet-layer's helper.[4]

That was Mr. Heard's last job.[5]  He alleged he could no longer do that work because of

his medical conditions.[6]

---

[1] See docket entry # 2 (complaint).

[2] SSA record at p. 38.

[3] Id. at p. 43.

[4] Id. at pp. 38-39 & 135.

[5] Id. at p. 135.

[6] Id. at pp. 38-39 & 135.

Mr. Heard based disability on degenerative arthritis and heart problems.[7]  He

alleged he could not walk, stand or sit for more than an hour at a time and that he

experienced chest pain about twice a week.[8]  Most of Mr. Heard's medical records

flowed from incarceration that occurred from September of 2007 to October of 2008.  A

few medical records flowed from incarcerations in November of 2008, December of

2008, October of 2009, and November of 2009.  His medical records documented heart

problems, but only briefly mentioned arthritis.

After considering Mr. Heard's application, the Commissioner's ALJ determined

that although Mr. Heard had severe impairments—hypertension and aortic

regurgitation[9]—he had the residual functional capacity (RFC) to do light work, except

that he must avoid heat, cold, dust, fumes, vibration, and hazards, and be permitted to

sit/stand at will.[10]  The ALJ consulted with a vocational expert about jobs available for

persons with that RFC.[11]  Because the vocational expert identified available jobs,[12] the

---

[7] *Id*. at p. 135.

[8] *Id*. at p. 145.

[9] *Id*. at p. 16.

[10] *Id*. at p. 17.

[11] *Id*. at pp. 52-57.

[12] *Id*. at p. 57.

ALJ concluded that Mr. Heard was not disabled under the Social Security Act.[13]  After

the Commissioner's Appeals Council denied Mr. Heard's request for review,[14] the ALJ's

decision became a final decision for judicial review.[15]  Mr. Heard raises two issues

challenging the ALJ's conclusion.[16]

    **Credibility**.  The success of Mr. Heard's application depended on the credibility

of his allegations because medical evidence did not show his conditions were disabling.

He attacked the ALJ's reasons for discounting his credibility.[17]  To evaluate Mr. Heard's

credibility, the ALJ followed the required two-step process[18] and considered the

---

[13] *Id*. at p. 20.

[14] *Id*. at p. 1.

[15] *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[16] Docket entry # 11.

[17] *Id*. at pp. 13-15.

[18] *See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

required factors.[19]  Thus, the question before the court is whether substantial evidence supports the ALJ's credibility assessment.

Mr. Heard applied for SSI on October 23, 2008[20]—the day after he was released from prison.  Prior to his release, Mr. Heard was seen by a treating cardiologist.  The cardiologist diagnosed Mr. Heard's heart condition as aortic valve regurgitation.[21]  This condition occurs when the aortic valve "cannot properly close after blood that is leaving the heart's left ventricle enters the aorta."[22]  "In cases of severe insufficiency a person may notice a variety of symptoms, including an uncomfortable pounding of the heart when lying down, a very rapid or hard heart beat (palpitations), shortness of breath, [and] chest pain. . . ."[23]  Mr. Heard complained of these symptoms.

---

[19] In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[20] SSA record at p. 112.

[21] *Id*. at p. 324.

[22] 1 The Gale Encyclopedia of Med. 437 (4th ed.).

[23] *Id*.

4

On September 19, 2008, the cardiologist reported that Mr. Heard's heart condition, as well as his hypertension, were stable.[24]  Although no medical evidence showed those conditions changed during the month prior to his release, Mr. Heard applied for SSI, asserting that he could not work, in part, to shortness of breath;[25] however, the cardiologist reported that Mr. Heard's shortness of breath had improved with treatment.[26]

Mr. Heard also alleged he could not work because of swelling in his legs,[25] but the cardiologist found no swelling during his exam.[26]  The disparity between the cardiologist's findings and report of stabilized conditions, and Mr. Heard's allegations of disabling conditions, weigh against Mr. Heard's credibility because no medical evidence showed that his condition worsened before he alleged he was disabled.[27]

The cardiologist's treatment notes also weigh against Mr. Heard's credibility by showing that treatment controlled Mr. Heard's heart condition.  Aortic valve

---

[24] SSA record at p. 324.

[25] *Id*. at p. 135.

[26] *Id*. at p. 324.

[25] *Id*. at p. 135.

[26] *Id*. at p. 323.

[27] Mr. Heard alleged he became disabled on January 1, 2001; *id*. at p. 112; however, he worked full-time in 2002 and 2003, *id*. at p. 136.  Working full-time weighs heavily against the credibility of the allegation of disability.

regurgitation "is usually corrected by having the defective valve surgically replaced. . . . Before the condition worsens, certain drugs can be used to help manage this condition."[28]  Mr. Heard's cardiologist prescribed drug therapy.  Reducing salt intake plays an important role in treating aortic valve regurgitation,[29] but Mr. Heard initially refused prescribed dietary restrictions.[30]  Drug therapy and reducing salt intake stabilized Mr. Heard's condition.[31]  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."[32]  Treatment records showing that Mr. Heard's condition was controlled by treatment weighed against the credibility of his allegations of disabling limitations.

Despite alleging disabling limitations, Mr. Heard did not seek treatment when he was released from prison.  He relied, in part, on emergency care to prove disability,[33] but that care flowed from subsequent incarcerations, not from self-initiated efforts towards care.  To the extent Mr. Heard relied on indigence to justify the lack of

---

[28] *Id*. at p. 438.

[29] *Id*.

[30] *Id*. at p. 262 (refusing a cardiovascular diet on Feb. 6, 2008).

[31] *Compare id*. at p. 183 (admitting heavy salt intake on July 18, 2008), *with id*. at p. 323 (noting on Sept. 19, 2008 that decreasing salt intake had improved breathing). Although smoking accelerates heart failure, Mr. Heard continued to smoke.

[32] *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citation omitted).

[33] SSA record at pp. 51 & 156.

6

treatment,[34] no evidence showed that Mr. Heard sought treatment available to indigent patients.  Mr. Heard's allegations of disabling functional limitations were inconsistent with the failure to seek treatment.[35]  The failure to seek treatment weighed against Mr. Heard's credibility.

A reasonable mind would consider the foregoing evidence—evidence of stabilized conditions at the time of the application, treatment records showing treatment controlled Mr. Heard's medical conditions, and the failure to seek treatment—adequate to support the ALJ's assessment of Mr. Heard's credibility.[36]  A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[37]  The ALJ in this case explicitly

---

[34] Docket entry # 11, pp. 16-17.

[35] *See Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms).

[36] *See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted) .

[37] *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

discredited Mr. Heard's statements and provided good reasons for doing so.[38]  The ALJ

did not err.

**Hypothetical question**.  The ALJ determined in step five of the disability-

determination process that jobs existed in the national economy that Mr. Heard could

do.  Mr. Heard maintains that the determination was not supported by substantial

evidence because the ALJ's hypothetical question did not incorporate all of his

limitations.[39]  In particular, he complains that arthritis pain, and prolonged walking and

standing were not adequately considered.

When a claimant like Mr. Heard suffers from nonexertional impairments, the ALJ

must obtain the opinion of a vocational expert at step five of the disability-

determination process. [40]  Testimony from a vocational expert constitutes substantial

evidence supporting the ALJ's disability conclusion if it responds to a properly phrased

hypothetical question.  A properly phrased hypothetical question captures the concrete

---

[38] In discounting Mr. Heard's credibility, the ALJ discussed the following reasons: (1) medical records did not support the alleged level of severity, (2) hypertension was controlled with medication, (3) heart condition was stable, (4) continued smoking despite aggravating heart condition, (5) infrequent complaints of chest pain and shortness of breath, and (6) no impact on ability to engage in activities of daily living.  SSA record at p. 19.

[39] Docket entry #11, p. 12.

[40] *Collins v. Astrue*, 648 F.3d 869, 871-72 (8th Cr. 2011).

consequences of the claimant's deficiencies.[41]  In framing a question, the ALJ may

exclude alleged impairments properly rejected as untrue or unsubstantiated.[42]

Mr. Heard claimed that arthritis caused constant, disabling pain,[43] but he sought

no treatment or pain relief.  The medical evidence included only brief references to

arthritis or joint pain. To the extent Mr. Heard experienced arthritis pain, the medical

consultant reviewed the medical evidence and opined that Mr. Heard's conditions were

not severe.[44]  As a result, the ALJ rejected the allegation as unsubstantiated.  The ALJ

was not required to include an unsubstantiated allegation in the hypothetical question.

Mr. Heard's complaint about prolonged walking and standing flowed from a

prison work restriction.  As part of the work-classification process, prison medical staff

restricted Mr. Heard from assignments requiring prolonged crawling, stooping,

running, jumping, walking or standing.[45]  Prison medical staff, however, characterized

Mr. Heard's physical condition as good and noted no problems with Mr. Heard's legs

or feet.[46]  Instead of including a restriction against prolonged walking and standing in

---

[41] *Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011).

[42] *Perkins*, 648 F.3d at 902.

[43] SSA record at p. 156.

[44] *Id*. at pp. 697.  *See also id*. at p. 682.

[45] *Id*. at p. 206.

[46] *Id*.

the hypothetical question, the ALJ included an at-will sit/stand option.[47]  The at-will

sit/stand option necessarily accommodated problems with prolonged standing or

walking because the option permits a person to discontinue standing or walking at

individual will.  By including an at-will sit/stand option the hypothetical question

captured the concrete consequences of Mr. Heard's impairments.[48]  Thus, the question

was properly phrased.

The vocational expert answered the question and identified responsive jobs.[49]

Because a vocational expert's testimony answering a properly-phrased hypothetical

question constitutes substantial evidence, the ALJ's RFC decision is supported by

substantial evidence.[50]  The ALJ did not err.

**Conclusion**.  Because substantial evidence supports the ALJ's decision denying

Mr. Heard's applications, and because the ALJ made no legal error, the court DENIES

Mr. Heard's request for relief (docket entry # 2) and AFFIRMS the decision denying the

applications.

---

[47] *Id*. at pp. 54-57.

[48] The ALJ included the following limitations: occasional postural limitations; avoidance of concentrations of dust, fumes, gases, odors, smoke, poor ventilation or other airborne irritants; and an at-will sit/stand option.  *Id*.

[49] The vocational expert identified the job of cashier.  *Id.* at p. 57.

[50] *Accord Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

DATED this 17th day of October, 2012.

_____
UNITED STATES MAGISTRATE JUDGE